```
                                                          FILED
                                                     IN CLERK'S OFFICE
                                                  US DISTRICT COURT E.D.N.Y.
UNITED STATES DISTRICT COURT                      ★   JUL 23 2012   ★
EASTERN DISTRICT OF NEW YORK
                                                      BROOKLYN OFFICE
```

------------------------------------------------------------x
JOSE LUIS ARROCHA,

                              Plaintiff,      **MEMORANDUM AND ORDER**

        -against-                                      11-CV-03975 (ENV) (LB)

THE CITY UNIVERSITY OF NEW YORK,
MANUEL SENEN VIVERO, AND HOWARD
JOHNSON,

                              Defendants.

------------------------------------------------------------x

**VITALIANO, D.J.**

      Pro se plaintiff Jose Luis Arrocha alleges defendants' refusal to hire him as an adjunct Spanish lecturer stemmed from (1) discrimination based on race and skin color and (2) retaliation for complaining about the alleged discrimination. His complaint asserts (1) claims against the City University of New York ("CUNY") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) claims against Manuel Senen Vivero in both his professional and personal capacities under 42 U.S.C. § 1981 as enforced through § 1983; and (3) claims against Vivero in his personal capacity under New York State Executive Law § 290 et seq., Human Rights Law ("NYSHRL"), which the Court construes as also including claims under New York City Admin. Code § 8–107 et seq., the New York City Human Rights Law ("NYCHRL") (collectively, "HRL"). Although the complaint also names Howard Johnson as a defendant, it does not assert any claims against him. Arrocha seeks, in summary, a declaration that his rights have been violated, damages flowing from those alleged violations, and an order enjoining Vivero, in his official capacity, from violating his rights.



1

Defendants have moved to dismiss, arguing (1) most of plaintiff's claims are time-barred; (2) none of plaintiff's claims are plausible; and (3) the complaint fails to state (or even purport to state) any claim against Johnson.[1] For the reasons recounted below, the motion is granted and all claims are dismissed with prejudice.

## Background

Arrocha, a self-described Panamanian-American with a dark complexion, is currently employed, as he has been for about 15 years, as a Spanish tutor at CUNY. See Arrocha v. City Univ. of N.Y., No. 02-CV-1868 (SJF) (LB), 2004 WL 594981, at *1-2 (E.D.N.Y. Feb. 9, 2004) ("Arrocha I"); (Compl. at p. 1.) For four semesters in 1999 and 2000, Arrocha served as an adjunct lecturer in the Spanish Department of CUNY's Medgar Evers College ("MEC"). Id. After marginal teaching reviews in spring 1999 and spring 2000 and an unsatisfactory review in fall 2000, CUNY elected not to reappoint Arrocha to the adjunct lecturer position for the spring 2001 semester. Id. On March 26, 2002, Arrocha filed suit against CUNY and various CUNY employees, including Vivero, alleging, in principal part, retaliation and discrimination based on national origin and skin color. Arrocha I, 2004 WL 594981, at *2; (Compl. at ¶ 9.) On defendants' motion for summary judgment, Judge Sandra Feuerstein dismissed Arrocha's claims based on national original discrimination but allowed his claims based on skin color and retaliation to proceed. Arrocha I, 2004 WL 594981, at *7-8. By consent of the parties, Magistrate Judge Lois Bloom presided over a jury trial. And, on July 22, 2004, the jury found

---

[1] After plaintiff opposed defendants' motion, defendants moved to preclude plaintiff from presenting copies of student education records, which he submitted with his opposition papers, allegedly in violation of the Federal Family Education Rights and Privacy Act ("FERPA"). On referral, Magistrate Judge Lois Bloom denied defendants' motion but also, with the agreement of the parties, restricted the records to case participants only. As Judge Bloom correctly predicted, neither the restricted records nor her ruling affects the reasoning and result reported in this Memorandum and Order.

2

for CUNY. Judgment in a Civil Case, <u>Arrocha v. City Univ. of N.Y.</u>, No. 02-CV-1868 (SJF) (LB) (E.D.N.Y. July 22, 2004). That is, the jury determined that CUNY had established lawful justification for its decision not to reappoint him as an adjunct Spanish lecturer.[2]

Undeterred, Arrocha promptly renewed his efforts, applying in 2005 for an adjunct lecturer position at MEC—the very position title, the jury found, he had been denied for lawful reasons. In 2006, after receiving no response to the 2005 application, he applied again and asked Vivero about the status of his 2005 application. Vivero informed Arrocha that the 2005 application was not processed because Vivero had been waiting for legal advice on how to proceed in light of the 2002 lawsuit. In 2007, having still not been hired, Arrocha repeatedly asked Vivero about his application. Vivero informed Arrocha that he was free to re-apply and would be given the same consideration as all other applicants under evaluation at that time. Arrocha applied again that year and was again denied. In response to further questioning, Vivero informed Arrocha that a college wide committee had rejected the 2007 application without giving reasons. Still undeterred, Arrocha re-applied in 2009, this time with the support of two letters of recommendation and a "student-petition letter." He was denied again.

Arrocha became convinced that his applications were being improperly rejected by Vivero. He therefore directed his efforts up CUNY's administrative hierarchy, first with a dean and then with defendant Johnson, a provost. During these efforts, and for the first time since his 2002 lawsuit, he alleged discrimination and retaliation. Further, Arrocha provided the dean

---

[2] In an apparent attempt to literally relitigate the 2002 lawsuit, plaintiff's first complaint challenged CUNY's decision not to rehire him in 2000. After defendants filed a letter indicating they intended to move to dismiss that complaint based on, inter alia, claim preclusion, Arrocha amended his complaint to focus on conduct occurring after 2004 and removed the claims *directly* challenging CUNY's decision not to rehire him in 2000. Except for the above references to Arrocha's 2002 lawsuit, the background facts are drawn only from plaintiff's amended complaint, which is considered true for purposes of this motion.

with the name of a fair-skinned candidate who was hired over allegedly better qualified "Black candidates" and told the dean that Vivero had transformed the department into a "light-skinned Latin club."

Dissatisfied with the responses from these senior CUNY administrators, Arrocha redirected his grievances outside of CUNY entirely. He filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on October 7, 2010. (Dkt. No. 22-2 at 31.) EEOC issued a right-to-sue letter on July 8, 2011 indicating it was unable to find a violation of federal law. Moreover, EEOC found (1) other individuals who had been hired for the lecturer positions were more qualified than Arrocha and (2) no causal connection existed between Arrocha's previous complaints and CUNY's decision not to hire Arrocha in 2009. (Dkt. No. 22-2 at 38-41.) After receiving his right-to-sue letter, he did precisely that.[3]

## Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 667, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." Id. (quoting Twombly, 550 U.S. at 555); see also In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

---

[3] The Court has reviewed plaintiff's letter dated June 5, 2012, which was also apparently sent to, among others, President Martinelli of Panama and President Obama, but finds it irrelevant to this motion.

Moreover, under Rule 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

That said, the factual allegations are paramount as "a complaint need not pin plaintiff's claim for relief to a precise legal theory" nor provide "an exposition of his legal argument." Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011). In analyzing well-pled facts, a court will draw all reasonable inferences in favor of plaintiff. See Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). Further, on a motion to dismiss, a court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Int'l Audiotext Network, Inc. v. Am. Tel.& Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Applicable here, in addition, because plaintiff is not represented, district courts must construe pleadings and briefs submitted by pro se litigants liberally and read them to raise the strongest arguments they suggest. Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007).

Finally, should a district court find pleadings to be inadequate, Rule 15(a) provides that the court should freely grant leave to amend those pleadings when justice so requires. But, a district court correctly denies leave to amend "when an amendment is offered in bad faith,

would cause undue delay or prejudice, or would be futile." Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). In the end, a court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).

## Discussion

### I. Only the § 1983 and HRL Claims based on the 2009 Re-Application are Timely

"Under Title VII . . . , a plaintiff can sue in federal court only after filing timely charges with the EEOC." McPherson v. New York City Dept. of Educ., 457 F.3d 211, 213 (2d Cir. 2006). In New York, "the statute of limitations for filing a charge of discrimination with the EEOC is 300 days after the alleged occurrence of an unlawful employment practice." Robles v. Cox and Co., Inc., 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012). A refusal to hire is a discrete act that accrues at the time of refusal. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-14, 122 S. Ct. 2061, 2072-73 (2002). Accordingly, in this case, only Title VII claims accruing after December 11, 2009, i.e., 300 days before the filing of the EEOC charge, are timely. Thus, as correctly determined by the EEOC, all Title VII claims based on the refusal to hire Arrocha based on his 2005, 2006, and 2007 applications are time barred. The timeliness of the Title VII claim based on the denial of the 2009 application is, at first glance, slightly less certain because the complaint does not state exactly when in 2009 the application was rejected. But, Arrocha does allege that he made the application in June 2009 and "was not hired in 2009." (Compl. at ¶ 16.) Almost certainly, this re-application sought appointment as an adjunct for the fall 2009 or spring 2010 semester. In either case, rejection would have come well in advance of December 11, 2009, and perhaps, if for the fall semester, as early as July

6

2009. Arrocha himself confirms this analysis: he admits knowing in November 2009 that the 2009 application had been denied. (Plaintiff's Opposition at ¶¶ 24-28.) Accordingly, all of Arrocha's Title VII claims are dismissed as time barred.

Arrocha's § 1983 and HRL claims fare slightly better. Claims under § 1983 and the HRL do not need to be preceded by the filing of EEOC charges, see Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004); Fleming v. Verizon New York, Inc., 419 F. Supp. 2d 455, 467 (S.D.N.Y. 2005), and are subject to a three year statute of limitations, see Owens v. Okure, 488 U.S. 235, 239, 109 S. Ct. 573, 576 (1989); Fleming, 419 F. Supp. 2d at 467. Accordingly, claims accruing before August 16, 2008 are time barred, meaning only the § 1983 and HRL claims based on the rejection of the 2009 application are timely.[4]

## II. Plaintiff's Claims are Not Plausible

Section 1981, as enforced through § 1983, and HRL protect job applicants from, inter alia, (1) discrimination on the basis of race and color and (2) retaliation for complaining about such discrimination.[5] See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); see also Patterson, 375 F.3d at 224-25 (§ 1981, as enforced through § 1983, protects job applicants from

---

[4] Arrocha argues that his complaints to CUNY tolled the relevant limitations periods. But, "[i]t has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct [and] the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." Kulkarni v. City University of New York, No. 01 CIV. 3019 (DLC), 2001 WL 1415200, at *4 (S.D.N.Y. Nov. 13, 2001) (internal citations and quotations marks omitted). Further, as described below, because the same threshold analysis applies to the timely claims and to the time-barred claims and because the claims all depend on essentially the same facts, the time-barred claims are also dismissed for the same reasons, given below, that the timely claims are dismissed.

[5] The Eleventh Amendment bars § 1983 suits in federal court against "arms of the state" such as CUNY and its senior colleges. Clissuras v. City University of New York, 359 F.3d 79, 81 (2d Cir. 2004). Thus, despite Arrocha's pro se status, the Court does not construe Arrocha's complaint as alleging any § 1983 claims against CUNY.

7

color-based discrimination); CBOCS W., Inc. v. Humphries, 553 U.S. 442, 446, 128 S. Ct. 1951, 1954-54 (2008) (§ 1981 proscribes retaliation); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 304, 313, 819 N.E.2d 998 (2004) (HRL proscribes retaliation and color-based discrimination). Moreover, the same threshold analysis governs these claims regardless of the applicable statute.[6] Acosta v. City of New York, No. 11 Civ. 856 (KBF), 2012 WL 1506954, at *4-7 (S.D.N.Y. April 26, 2012); see also Dixon v. Int'l Fed'n of Accountants, 416 Fed. App'x 107, 109 (2d Cir. 2011).

### A. Discrimination Claims

Plaintiff, pleading from the same sheet music panned by a jury in 2004, re-alleges he is a dark-skinned Panamanian-American, (Compl. at 1), and that in 2009 he was once again denied employment due to the color of his skin, (Compl. at ¶¶ 16-28.) He contends that "at least one" "fair skinned" applicant was hired over a better-qualified, darker-skinned applicant. (Compl. at ¶ 19.) Finally, he charges that Vivero was intentionally transforming the department into a "light-skinned Latin club." (Compl. at ¶ 17.) If considered in complete isolation, these allegations would potentially state a plausible claim given the relatively easy-to-satisfy standard applicable in employment discrimination pleadings. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514-15, 122 S. Ct. 992, 998-99 (2002); see also DiPetto v. U.S. Postal Serv., 383 F. App'x 102, 103-04 (2d Cir. 2010) (applying Swierkiewicz to an employment discrimination claim post Twombly).

---

[6] The Court acknowledges that in some respects NYCHRL provides broader protections than NYSHRL, Title VII, and § 1981. See Acosta, 2012 WL 1506954, at *4-7. But those differences in protection have no relevance here because, like the other statutes, NYCHRL requires a complaint to make plausible that the adverse employment action was due to plaintiff's race or to his engagement in a protected activity. See id. (dismissing NYSHRL and NYCHRL claims on the same bases).

8

In this case, however, the Court need not examine the complaint in isolation because it may consider that the 2004 judgment bars Arrocha from contesting that CUNY had a legally justifiable and nondiscriminatory reason for declining to rehire him in 2000 as an adjunct Spanish lecturer—again, precisely the same job title in issue here. See NML Capital, Ltd. v. Banco Central de la Republica Argentina, 652 F.3d 172, 185 (2d Cir. 2001) ("Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." (quotations omitted)); Levy v. Kosher Overseers Ass'n of America, Inc., 104 F.3d 38, 41 (2d Cir. 1997) (explaining that the doctrine of issue preclusion provides that a later action "may be affected, and possibly barred, even though it involves a different claim or cause of action" (quotations omitted)); Can v. Goodrich Pump & Engine Control Systems, Inc, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("On a motion to dismiss under Rule 12(b)(6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion."). According to the Court's judicial experience and common sense, an employer would very rarely rehire an applicant for the very same position for which it had previously found the applicant's performance lacking. The natural implication of an employer's refusal to hire such an applicant is that the employer already knows it will not be satisfied with the applicant. Of course, it is theoretically possible that an employer would hire such a person. Perhaps, for example, in a rare case, an employer would rehire a formerly discharged employee who had clearly demonstrated that his previously perceived inadequacies had been remedied. It is also theoretically possible that an employer which elected not to rehire such a person could do so for an improper reason. But, to state a valid claim based on the alleged occurrence of that theoretical possibility, a complaint would have to plead facts making plausible that the employer declined to rehire the applicant for an

improper reason instead of the much more obvious reason that it still believes the applicant to be a poor fit for the position.

As a consequence of his employment discrimination litigation prologue with CUNY, Arrocha must do more to successfully plead a new discrimination claim here. Even the most solicitous review of the complaint and other papers Arrocha has submitted reveals he has failed to do so. The complaint essentially rehashes the same allegations that Arrocha made, and the jury rejected, in his 2002 lawsuit. Importantly, the complaint does not allege that Arrocha is more qualified in any notable way than he was in 2000, let alone so much more qualified by newly acquired teaching experience that CUNY would possibly consider rehiring him despite that it already employed him for four semesters and found his performance lacking.[7] Arrocha's mere allegation that he submitted recommendation letters and a student petition with his 2009 application change nothing because CUNY already had extensive experience employing him in the position at issue. Further, Arrocha's allegation that certain "less qualified" "fair skinned" candidates were hired over better qualified black candidates is wholly conclusory and, as applied to him, is all but meaningless. Those candidates are poor comparators given the lack of allegations that CUNY had prior, negative experiences employing them as it has had with

---

[7] Though not relied on, plaintiff's opposition indicates he has virtually the exact same academic qualifications and work experience that he had in 2000. (Plaintiff's Opposition at ¶ 36-37.)

plaintiff.[8] See Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 220 (S.D.N.Y 2010) (dismissing an employment discrimination complaint because of, inter alia, a failure to identify "any similarly situated individual, outside of [plaintiff's] protected race . . . , who was treated any differently under similar circumstances").

In short, viewed in the context of the established fact that CUNY for totally nondiscriminatory reasons declined to rehire Arrocha in 2000 for the very position at issue here, the complaint fails to state a plausible discrimination claim. Indeed, it is also successive litigation fixated on the very issue that the jury resolved against Arrocha, namely, that there was no unlawful motive for CUNY's decision not to rehire him.

### B. Retaliation Claims

The retaliation claim meets a similar fate. To state a plausible retaliation claim, Arrocha would have to "plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007). To start, there is no possibility of a causal connection between Arrocha's complaints of discrimination to CUNY and the 2009 rejection because Arrocha made those complaints only after the 2009 rejection. (Compl. at ¶¶ 17-26; Plaintiff's Opposition at ¶¶ 9-35.) Further, and independently, as

---

[8] Plaintiff's opposition, if anything, indicates this suit is guided entirely by (1) Arrocha's overly narrow focus on comparing applicants based solely on their formal educations and (2) Arrocha's refusal to accept that CUNY declined to hire him in 2000 based on his performance. For example, plaintiff complains that an applicant was hired in 2010 despite that he is "better qualified *academically*." (Plaintiff's Opposition at ¶¶ 29-33 (emphasis added).) Arrocha appears to believe that the hiring decision was unjustified solely because, unlike that applicant, Arrocha has two years of doctoral studies. (Id. at ¶¶ 31, 37.) Amazingly, however, considering the nature of this suit, the other applicant is "dark-skinned." (Id. at ¶ 31.) To cut to the quick, though the Court need not consider it, Arrocha's opposition taken as true effectively demonstrates that CUNY does hire dark skinned individuals for the exact position at issue here.

discussed above, the complaint has not made plausible that CUNY declined to hire Arrocha for any reason other than its opinion of his particular qualifications and its previous experience employing him as a lecturer.[9]

### C. § 1983 Claims Against Johnson

Though the complaint does not allege a claim against Johnson, Arrocha alleges in his opposition that Johnson deprived him of due process. Assuming the complaint can be read as asserting such a claim, the claim still fails. "In order to prevail on a § 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." Rehman v. State Univ. of New York at Stony Brook, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001)). First off, analytically, of course, Arrocha had no protected interest in the position for which he was not hired, see id., and thus any claim against Johnson is fatally flawed. Arrocha's claim against Johnson also fails because the availability of an Article 78 proceeding to review Johnson's actions satisfies any due process concerns. See, e.g., Goonewardena v. New York State Workers' Compensation Bd., No. 09 Civ. 8244 (LTS) (HBP), 2011 WL 4822553, at *5 (S.D.N.Y. Oct. 5, 2011). Further, because nothing in the

---

[9] Assuming arguendo that the complaint could be reasonably construed as alleging the 2002 lawsuit was the protected activity, the retaliation claims would also fail for an additional reason. The seven year gap between the 2002 lawsuit and the rejection of the 2009 application cannot support a causal inference of retaliation. See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554-55 (2d Cir. 2001); see also McDowell v. North Shore-Long Island Jewish Health System, Inc., 788 F. Supp. 2d 78 (E.D.N.Y. 2011) ("While some courts within this Circuit have held that a three month gap is insufficient to show a causal connection, others have found that a separation of as much as eight months will permit an inference of causation.").

complaint even remotely suggests that Johnson played any role in the decision not to hire Arrocha, the complaint does not and cannot be amended to assert any other claim against him.

## Conclusion

For the foregoing reasons, the motion to dismiss is granted and all claims, both federal and state, are dismissed. Further, in light of the fact that Arrocha already repleaded his claims once after defendants indicated their intent to challenge the first complaint based on claim preclusion and because a liberal reading of the current complaint gives no indication that a valid claim could be stated if Arrocha were given the opportunity to file a third complaint, the dismissal is with prejudice as to all claims.

The Clerk is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York  
July 8, 2012

ERIC N. VITALIANO  
United States District Judge